## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| CANYON DUFF MOYE, | ) | |
| (AIS# 319956) | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 22-00026-JB-B |
| | ) | |
| MANUEL POUPARINAS, M.D., | ) | |
| | ) | |
| **Defendant.** | ) | |

### DEFENDANT MANUEL POUPARINAS, M.D.'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO RULE 50(b) OF THE FEDERAL RULES OF CIVIL PROCEDRE

Comes now the Defendant, Manuel Pouparinas, M.D., and moves this court to enter judgment as a matter of law in his favor pursuant to Rule 50(b) of the Federal Rules of Civil Procedure. Dr. Pouparinas is entitled to judgment as a matter of law because after presenting all of the evidence, Plaintiff, Canyon Moye, failed to prove his case.

### ARGUMENT

The sole defendant to this case was Manuel Pouparinas, M.D. The sole remaining claim against Manuel Pouparinas, M.D. was for deliberate indifference to medical needs under § 1983. Evidence submitted by Dr. Pouparinas in this case and accepted by the Court included the following evidence:

1

In 2015 Moye was injured in a one car accident. As a result Moye underwent multiple surgeries resulting in peripheral neuropathy in his left leg and left foot and leaving Moye with little feeling in his left leg and left foot.

In 2016 Moye injured his left foot while walking barefoot in a creek. He did not seek medical attention for 8 months for the left foot wound. When he did seek medical attention he was seen and treated by Travis Paul MD. When Dr. Paul initially saw Moye, the wound on Moye's foot revealed "right great toe with exposed bone, edema, cellulitis, and an odor." (Wexford 403 (Pouparinas Trial Ex. "PTE"144) - 404 (PTE 145)). The MRI and the bone scan were consistent with osteomyelitis. *Id.* On the initial visit with Dr. Paul, Dr. Paul offered amputation of Moye's left great toe due to the chronic osteomyelitis. (Wexford 405 (PTE 146)). The left foot x-ray of Moye ordered by Dr. Paul on March 15, 2018, revealed destruction of the toes of Moye's left foot due to chronic osteomyelitis. (Wexford 380) (PTE 157)).

On March 8, 2019, while incarcerated at the Escambia County Jail, Moye was seen by Jeffrey Dull, DPM. Dr. Dull's notations from March 8, 2019 stated in part as follows:

Subjective

Patient presents today for evaluation of left foot infection. He was in an auto accident in 2015, and has had deformity since. He was on IV antibiotics last year per Dr. Paul. He relates that it has been warm, red and tender for the past few months. Patient is wearing a size 11 Croc.

X-ray, 3 views AP, lateral and MO of the bilateral feet

Radiographic findings:

Significant erosive changes noted to the left 2nd metatarsal head, 2nd and 3rd proximal phalangeal bases and first proximal phalangeal head. There is significant periosteal reaction noted to the 2nd and 3rd metatarsals. The lesion marker is adjacent to a bony area which seems to be the base of the 3rd proximal phalanx. The rest of the 3rd toe has shifted laterally. Cystic change is noted to the 1st and 4th metatarsal heads. Shift of the 4th metatarsal head medially suggests previous fracture. Decreased calcaneal inclination and arch height noted on the

left compared to the right hallux abductus angle is increased. Joint
space narrowing is in metatarsocunieform joint.

…

Since this is recurrent infection previously treated with IVs partial
amputation should be considered if this is not able to be stabilized.
MRI will also serve as a surgical planning function. Partial resection
of the 2nd and 3rd rays may facilitate healing however transmetatarsal
amputation was also discussed.

(Moye 792-794 (Plaintiff's Trial Exhibit 26)).

Moye was again seen by Jeffrey Dull, DPM on April 22, 2019. Dr. Dull's
notations from that date stated in part as follows:

Partial foot amputation will be considered with recalcitrant
osteomyelitis flare.

(Moye 795-796 (Plaintiff's Trial Exhibit 26)).

Moye was again seen by Jeffrey Dull, DPM on May 13, 2019. Dr. Dull's
notations from that date stated in part as follows:

Subjective

Patient presents for follow-up on ulcer between his 2nd and 3rd toe. He
is scheduled for last IV dose today. He relates the wound is much
better but still has some drainage.

I recommend transmetatarsal type amputation with recurrent major
flare

(Moye 797-798 (Plaintiff's Trial Exhibit 26)).

On August 29, 2019, Moye was initially incarcerated at the Kilby
Correctional Facility with the Alabama Department of Corrections.
(Wexford 38 (PTE2).  On October 2, 2019, Moye was provided with a
limited profile by Marianne Baker, CRNP, for "no prolong standing or
walking x (unlimited) duration." (Wexford 119 (PTE 10)).

On Friday October 4, 2019, (three and a half years after the foot
injury, and nearly three years after initially being treated by Dr. Paul)
Moye arrived as an inmate with the Alabama Department of
Corrections at the Fountain Correctional Facility.   Moye completed a

sick call request stating that he had an infected wound on his left foot from a reoccurring wound. (Wexford 269 (PTE 14)).

October 4, 2019, was a Friday and Dr. Pouparinas did not work Fridays.   Therefore, the first time that Dr. Pouparinas could see Moye was the following Monday, October 7, 2019.

On Monday October 7, 2019, Mr. Moye was initially seen and evaluated by Dr. Pouparinas. Dr. Pouparinas ordered an x-ray of Mr. Moye's foot, ordered the antibiotic Augmentin twice daily for Mr. Moye from October 7, 2019 through October 20, 2019, ordered Ibuprofen from October 7, 2019 through November 5, 2019, ordered wound care three times a week, and ordered that Mr. Moye return to be seen by Dr. Pouparinas in two weeks. Dr. Pouparinas also provided Moye with a tube of Silvadene, a topical antibiotic.  (Wexford 98 (PTE 18),196 (PTE 15), 199 (PTE 16)).  The x-ray was taken on October 7, 2019. (Wexford 299 (PTE 17)).  Moye picked up his prescription of Augmentin on October 9, 2019. (Wexford 498 (PTE 131)). The prescription was provided KOP (keep on person) so Moye did not have to go to pill call to receive his medications.


Moye did not return to the Health Care Unit (HCU) on October 9, 11, 14, 18, 23 or 25, 2019.   However, new appointments were made for Moye each time when he missed his scheduled wound care appointments. (Wexford 98 (PTE 18), 118 (PTE 19), 112 (PTE 20), 111 (PTE 21), 109 (PTE 22)).

On October 28, 2019, Moye returned to the HCU and was seen and evaluated by the nurse practitioner. The nurse ordered wound treatment for Mr. Moye and a follow-up appointment with Dr. Pouparinas on October 29, 2019. (Wexford 195 (PTE 23)).  Moye informed the nurse practitioner that an old blister had formed on the sole of his left foot while wearing state boots and being on his foot a lot due to working.  *Id.* Moye failed to show for his appointment at the HCU on October 29, 2019.  (Wexford 110 (PTE 24)).

On Friday November 15, 2019, Moye returned to the HCU, and was seen and evaluated by the nurse practitioner.  Moye informed the nurse practitioner that the wound on his left foot had opened two days previously.  (Wexford 216 (PTE 28)).  Lab work was ordered, as well as a wound culture of Mr. Moye's left great toe. (Wexford 215 (PTE

25)).  Daily wound care was ordered for Mr. Moye's left foot.  *Id.* Moye was admitted into the infirmary by the nurse practitioner and the nurse practitioner ordered IV antibiotics for 14 days.  *Id.*  The record reveals that Moye refused the IV antibiotic on November 15, 2019. (Wexford 499 (PTE 121)).  As November 15, 2019, was a Friday, Dr. Pouparinas was not physically at Fountain.  The record reveals that a telephone order was made by Dr. Pouparinas discontinuing the IV antibiotic as it was refused and placing Moye on Augmentin, twice daily for ten days. (Wexford 217 (PTE 41)).  The IV antibiotic was discontinued at 2.13 pm on November 15, 2019. (Wexford 497 (PTE 120)).

Lab work was drawn on November 15, 2019 (Wexford 291 (PTE 52) - 296 (PTE 58)).

An order for daily Hibiclens wound care was also ordered by Dr. Pouparinas on November 15, 2019, and Moye was instructed to return to the HCU daily for wound care treatment. (Wexford 217 (PTE 41), 105 (PTE 42), 106 (PTE 43)).

The antibiotic Augmentin was ordered from November 15, 2019 through November 30, 2019. (Wexford 496  (PTE 132)).  Moye picked up the prescription for Augmentin on November 15, 16, 17, 18, 21, 22, 23, 24, 25, 26, 27, 28, 29 and 30, 2019.  (Wexford 496 (PTE 132)).  Daily acidic acid foot treatment was ordered from November 19, 2019 through December 19, 2019. Solocite wound gel treatment was ordered from November 19, 2019 through December 18, 2019. (Wexford 194 (PTE 47), 198 (PTE 46)).   Moye was provided with the daily foot wound care on November 22, 28, 29 and 30, 2019. (Wexford 496 (PTE 119) -497 (PTE 120)).

On November 18, 2019, Mr. Moye was seen, assessed, and evaluated by Dr. Pouparinas. Dr. Pouparinas debrided the wound on Moye's left foot.  Dr. Pouparinas wrote an order for Moye to continue to receive daily wound care.  (Wexford 96 (PTE 58), 194 (PTE 47)).  Lab work was drawn.   (Wexford 297 (PTE 49), 298 (PTE 50)).

On November 19, 2019, Moye received wound care at the HCU at Fountain.  (Wexford 96 (PTE 58)).

On November 22, 2019, Moye received wound care at the HCU at Fountain.  (Wexford 96 (PTE 58)).

On November 23, 2019, Moye received wound care at the HCU at Fountain.  (Wexford 96 (PTE 58)).

On November 25, 2019, Moye was seen in the HCU and had his vital signs taken.  Moye was told to follow up with his wound care. (Wexford 193 (PTE 61)).

On November 27, 2019, Moye received wound care at the HCU at Fountain.  (Wexford 96 (PTE 58)).

On November 28, 2019, Moye received wound care at the HCU at Fountain.  (Wexford 96 (PTE 58)).

On November 29, 2019, Moye received wound care at the HCU at Fountain.  (Wexford 96 (PTE 58)).

Moye failed to show up for his wound care on November 30, 2019 and a new appointment was made for Moye for December 1, 2019. (Wexford 103 (PTE 62)).

On December 3, 2019, the antibiotic Bactrim was ordered from December 3, 2019 through December 13, 2019 – for ten days twice a day.  (Wexford 294 (PTE 55), 494 (PTE 122), 174 (PTE 66)).  The prescription was written KOP.   Moye did not pick up the prescribed antibiotic Bactim from the HCU. (Wexford 494 (PTE 122)).  Daily acidic acid wash treatment was ordered from December 1, 2019 through December 19, 2019. Solicite wound gel treatment was ordered daily from December 1, 2019 through December 19, 2019. Bactroban ointment treatment was ordered twice daily for 14 days from December 2, 2019 through December 17, 2019.  (Wexford 494 (PTE 122)).  Moye failed to show for a majority of his wound care appointments.  However, Moye did pick up his prescribed pain medication from the HCU on December 1, 2019.  (Wexford 494 (PTE 122)).

On December 4, 2019, Dr. Pouparinas wrote an order that Moye was to be allowed to go to the HCU daily for one month.  (Wexford 102 (PTE 63)).

On December 16, 2019, Moye was seen and evaluated by the nurse practitioner.  The nurse practitioner made a plan to order an outside (free world) appointment for Moye to be seen by a specialist for a debridement and she also noted that she had consulted with Dr. Pouparinas regarding Moye's condition.  (Wexford 192 (PTE 68)).

On December 16, 2019, a request was made for Mr. Moye to be seen by Travis Paul M.D., Moye's outside general surgeon specialist. The request was made by the nurse practitioner and Dr. Pouparinas. The nurse practitioner noted: "consulted with Dr. P., in agreement with UM request. Patient treated with antibiotic therapy twice for infection twice, with debridement done onsite x 1. Pt has daily wound care without improvement. Hx of osteomyelitis." (Wexford 363 (PTE 69)).

The request was approved on December 18, 2019, and an appointment was made for Moye to be seen with Dr. Paul on December 19, 2019. The appointment was made for January 7, 2019. (Wexford 363 (PTE 69)).

Sick call requests were completed by Moye on December 21 and 27, 2019. (Wexford 266 (PTE 70) – 267 (PTE 71)). There is no indication that Moye completed any sick call requests between October 4, 2019 and December 21, 2019. (Wexford 269 (PTE 14), 267 (PTE 71)). Nor is there any indication that Moye ever submitted any written medical grievances.

Moye refused to be triaged on December 31, 2019 and a release of responsibility form was completed. (Wexford 123 (PTE 74)).

On January 6, 2020, Moye was instructed to report daily to the HCU for wound dressing daily. Moye was instructed to report to the HCU when on break from trade school. (Wexford 126 (PTE 74)).

On January 7, 2020, Moye was seen by the outside specialist Travis Paul M.D. Dr. Paul was Moye's outside free world general surgeon who had treated Moye prior to Moye's incarceration. On January 7, 2019, Dr. Paul performed a debridement of the wound on Moye's left foot. Dr. Paul suggested that Moye receive daily acidic acid wash, an MRI, and a follow-up appointment with Dr. Paul in two weeks. (Wexford 361 (PTE 76)). Dr. Paul did not order any antibiotics (IV or oral) and neither did Dr. Paul order hospitalization or emergent treatment for Moye. Id. On that same day, January 7, 2020, Dr. Pouparinas noted to follow up on Dr. Paul's suggestions to order an MRI for Moye, daily acidic acid wash, and a follow-up appointment with Dr. Paul. (Id., Wexford 360 (PTE 87)).

Dr. Paul's typed notes from the January 7, 2020, appointment state: "The patient is a 23 year old male who presents with a complaint of a

left foot wound.  Long history of a foot wound related to neuropathy from an accident.  No fever.  Large callous." (Wexford 342 (PTE 77)).  "Culture returned as pseudomonas and serratia.  Local wound care.  Its almost best if he just has a transmet amputation.  This foot has been a problem for several years." (Wexford 343 (PTE 78)).

When Moye returned from seeing Dr. Paul Moye was admitted into the ward in the HCU at Fountain by Dr. Pouparinas for a 23 hour observation.  Dr. Pouparinas entered an order that the wounds on Moye's left foot were to be cleaned and dressed daily.  (Moye 225 (PTE 82), 229 (PTE 80)).

Moye was discharged from the infirmary on January 8, 2019, with orders from Dr. Pouparinas for daily wound care with acetic acid wash.  (Wexford 220 (PTE 83)).

On January 8, 2020, Dr. Pouparinas requested a follow up appointment with Dr. Paul and an MRI.  Both were approved on January 10, 2020.  (Wexford 359 (PTE 88), 358 (PTE 89)).

On January 11, 2020, Moye was seen and assessed in the HCU by the RN.  The nurse noted no odor or purulent drainage from Moye's left foot wound.  (Wexford 265 (PTE 92)).   Moye had no dressing on his wounds when he was assessed by the RN stating that he had taken the dressing off the night before when he had taken a shower. *Id.*

On January 12, 2020, Moye was again seen and assessed by a nurse in the HCU for daily dressing change.  Moye informed the nurse that he had some drainage from the wound.  The nurse noted that she did not see any drainage from the wound.  However, she notified Dr. Pouparinas and Dr. Pouparinas gave a verbal order to start Moye on Ciprofloxacin (an antibiotic) 500 BID for 14 days. *Id.*   Moye picked up his prescription for Ciprofloxacin at the HCU every day from January 12, 2020 through January 25, 2020. (Wexford 485 (PTE 124)).

On January 13, 2020, a wound culture was taken. (Wexford 290 (PTE 94)).

On January 21, 2020, an MRI was performed.  (Wexford 351- 352 (PTE 97-98)).

On January 21, 2020, Moye was seen in the HCU by the nurse practitioner.   The nurse practitioner noted that Moye was receiving

Cipro, had an MRI scheduled and had a follow up appointment with Dr. Paul the following week. The nurse noted that Moye was to continue on Cipro and that the antibiotic Bactrim was to be added for 14 days. (Wexford 191 (PTE 96)). Moye received Bactrim every day from December 21, 2020, through December 28, 2020. (Wexford 487 (PTE 126)).

On January 22, 2020, Dr. Pouparinas received the MRI and noted that he was going to make a referral for My Wound Care doctor. (Wexford 353 (PTE 95), 350 (PTE 100)).

Lab work was taken on January 22, 2020. (Wexford 356 (PTE 99)).

On January 23, 2020, the Health Services Administrator spoke with Dr. Pouparinas regarding Moye's lab results and the MRI. (Wexford 190 (PTE 101)).

Dr. Pouparinas left his position at Fountain on January 26, 2020.

At no time did Dr. Pouparinas refuse to see, treat or evaluate Moye. Dr. Pouparinas ordered x-rays, MRIs, antibiotics, daily wound care, debrided Moye's wounds on his left foot, ordered labs and wound cultures and sent Moye out to see a free world specialist. Dr. Travis Paul testified during the trial of this matter that the amputation that he performed in February 2020 was not urgent or emergent. Dr. Paul testified that he could have continued to treat Moye with antibiotics and wound care.

A prison official violates the Eighth Amendment's prohibition of cruel and unusual punishment only when that official is deliberately indifferent to the serious medical needs of an inmate. See *Estelle v. Gamble*, 429 US 97, 104-05, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). In order to prevail in a deliberate indifference claim, a plaintiff must establish both that the plaintiff had an objectively serious medical

need and that official subjectively acted with deliberate indifference to that need. *Burnette v. Taylor*, 533 F. 3d 1325, 1330 (11th Cir. 2008).

To show the official subjectively acted with deliberate indifference, "the plaintiff must prove that the defendant (1) actually knew about a risk of serious harm; (2) disregarded that risk; and (3) acted with more than <u>negligence</u>." *Wade v. McDade,* 67 F. 4th 1363, 1370 (11th Cir. 2023) (citing *Hoffer v. Secretary, Fla. Dep't of Corr.,* 973 F. 3d 1263, 1270 (11th Cir. 2020)). (space intentionally left blank by the 11th Circuit), vacated sub. nom. *Wade v. Ga. Corr. Health, LLC*, No. 21-14275, 83 F. 4th 1332, 2023 WL 6613842, at *1 (11th Cir. Oct. 11, 2023), reh'g granted. It is not sufficient to prove that the defendant "should have known" about the risk of harm: "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Franklin v. Curry*, 738 F. 3d 1246, 1250 (11th Cir. 2013) (quoting *Goodman v. Kimbrough*, 718 F. 3d 1325, 1332 (11th Cir. 2013)). In short, each defendant is judged individually based on what they know.  See *Harper v. Lawrence County,* 592 F. 3d 1227, 1234 (11th Cir. 2010); *Iriele v. Griffin,* 2023 WL 8439743 (N.D. Ala. December 5, 2023).

In *Wade v. McDade*, *supra*, one of the most recent decisions from the Eleventh Circuit on the issue of the standard of conduct, the Court addressed a split among Eleventh Circuit panels and held that that the proper standard requires proof

10

of "more than gross negligence."[1]  The Court noted that the first panel to have

confronted the standard of care issue adopted the "more than gross negligence

standard." *Wade*, 67 F. 4th at 1372 (citing *Townsend v. Jefferson,* 601 F. 3d 1152,

1158 (11th Cir. 2010)).  Accordingly, the court was bound by the prior-panel-

precedent rule to proceed under the "more than gross negligence standard." *Wade*,

67 F. 4th at 1373 (citing *United States v. Dailey*, 24 F. 3d 1323, 1327 (11th Cir.

1994)). This standard is the "equivalent of recklessly disregarding a substantial risk

of serious harm." *Wade*, F. 4th at 1375 (quoting *Cottrell v. Caldwell*, 85 F. 3d 1480,

1491 (11th Cir. 1996)).

Based upon this most recent Eleventh Circuit precedent, and until such time

as that Court holds to the contrary *en banc*, this Court is bound by "more than

gross negligence" standard of care.   Accordingly, to establish a claim of deliberate

indifference, Moye had to show that Dr. Pouparinas acted with "more than gross

negligence," also defined as a reckless disregard.  Plaintiff's evidence in this case

fell far short of that standard.  As a result, Defendant is entitled to judgment as a

matter of law.

Initially, it should be noted that mere medical malpractice or a failure to

properly diagnose does not give rise to a deliberate indifference claim. See

---

[1] This decision is currently pending a potential rehearing *en banc*.

*McElligott v. Foley*, 182 F. 3d 1248, 1254 (11th Cir. 1999). Rather, deliberate

indifference is typically only found in the most egregious situations. See *Wade*, 67

F. 4th at 1376.  Thus, even if it could somehow be said that Dr. Pouparinas

disregarded Moye's serious medical needs, (which he never did) that is not

enough-Dr. Pouparinas must have also "acted with more than gross negligence."

*Green v. Burnside*, 2023 WL 5960748 (M.D. Ga. 2023). This standard requires a

showing that Dr. Pouparinas "recklessly disregarded a substantial risk of serious

harm to "Moye." *Wade,* 67 F. 4th at 1394.

The evidence is undisputed that Dr. Pouparinas actively treated Plaintiff's

condition over a period of several months, providing substantial treatment to

Plaintiff.  Plaintiff offered testimony from his expert, who opined that he would

have recommended a difference course of treatment than Dr. Pauparinas.

However, this is nothing more than a disagreement about the course of Moye's

treatment-"a classic example of a matter for medical judgment" that cannot give

rise to an actionable claim of deliberate indifference. *Estelle*, 429 U.S. at 107,

*Harris v. Thigpen,* 941 F. 2d 1495, 1505 (11th Cir. 1991) ("Mere incidents of

negligence or malpractice do not give rise to the level of constitutional

violations.").

The Court recognized Moye's expert, a general surgeon, who opined that Dr.

Pouparinas, a family medicine physician, "deviated from the standard of care

required" and should have immediately sent Moye to see an outside specialist. As a matter of law, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [fails to] support a claim of cruel and unusual punishment." *Keohane v. Fla. Dep't of Corr. Sec'y,* 952 F. 3d 1257, 1266 (11th Cir. 2020). ("[I]t is axiomatic that simple medical malpractice does not rise to the level of a constitutional violation." *Wade,* 67 F. 4th at 1375. Although [Moye] may have desired different modes of treatment, the care [Dr. Pouparinas] provided him did not amount to deliberate indifference. *Hamm v. DeKalb Cnty.,* 774 F. 2d 1567, 1575 (11th Cir. 1985). Consequently, any argument about what Dr. Pouparinas should have done or whether the standard of care was breached is misplaced in the context of an Eighth Amendment claim. In short, accusations by a specialist [general surgeon] that Dr. Pouparinas breached the standard of care, on these facts, is irrelevant for a claim of deliberate indifference. The undisputed evidence demonstrated that Dr. Pouparinas did treat and provide substantial and regular care to Moye's left foot wounds. That a general surgeon might have taken a different course does not suggest that Dr. Pouparinas disregarded Moye's foot wounds, much less that Dr. Pouparinas acted with more than gross negligence.

The treatment undisputedly provided by Dr. Pouparinas' in response to Moye's medical condition was not "poor enough to constitute an unnecessary and

wanton infliction of pain." *Taylor v. Adams*, 221 F. 3d 1254, 1258 (11th Cir. 2020). Yet, that is what must occur for the success of Plaintiff's Eighth Amendment claim. Nor did Dr. Pouparinas provide "grossly inadequate care," make "a decision to take an easier but less efficacious course of treatment," or provide "medical care that [was] so cursory as to amount to no treatment at all." *Melton v. Abston*, 841 F. 3d 1207, 1223 (11th Cir. 2016).

As the Eleventh Circuit recently reiterated, "deliberate indifference is not a constitutionalized version of common-law negligence." *Hoffer v. Fla. Dep't of Corr.*, 973 F. 3d 1263 (11th Cir. 2020) (citing *Swain v. Junior*, 961 F. 3d 1276 (11th Cir. 2020)). The Court in *Hoffer v. Fla. Dep't of Corr.* stated: "To the contrary, we (echoing the Supreme Court) have been at pains to emphasize that "the deliberate indifference standard . . . is far more onerous than normal tort-based standards of conduct sounding in negligence," and is in fact akin to "subjective recklessness as used in the criminal law."" *Id.* "Quoting, respectfully, *Goodman v. Kimbrough*, 718 F. 3d 1325, 1332 (11th Cir. 2013), and *Farmer v. Brennan*, 511 U.S. 825, 839-40, 114 S. Ct. 11970, 128 L.Ed. 2d 811 (1994)). The Eleventh Circuit Court in *Hoffer*, continued: "With respect to prisoner's medical care, in particular, we have held that the Eighth Amendment doesn't require it to be "perfect, the best obtainable, or **even very good**." *Id*. citing *Harris*, 941 F. 2d at 1510.  (Emphasis added).

While Dr. Pouparinas denies that he provided less than "good" medical care to Moye, even if he had not, that would still be insufficient as a matter of well-settled law to constitute deliberate indifference.  Indeed, the Eleventh Circuit further recognized: "[W]here a prisoner has received **some medical attention** and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgment and to constitutionalize claims which sound in state tort law." *Id.* citing *Harris*, 941 F. 2d at 1507 (quoting *West Lake v. Lucas,*537 F. 2d 857, 860 n.5 (11th Cir. 1976)) (Emphasis added); Accord, e.g., *Hamm v. Dekalb Cty.,* 774 F. 2d 1567, 1575 (11th Cir. 1985); *Lamm v. Norwood*, 899 F. 3d 1159, 1162 (10th Cir. 2018) ("We have consistently held that prison officials do not act with deliberate indifference when they provide medical treatment even if it is sub-par or different from what the inmate wants."); *Kosilek v. Spencer*, 774 F. 3d 63, 82 (First Circuit 2014) (en banc).

Although the Eighth Amendment prohibits "the unnecessary and wanton infliction of pain," *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (quoting *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976)), it prohibits "deliberate indifference to serious medical needs of prisoners." *Id.*  This standard requires only that "Federal and state governments [] have a constitutional obligation to provide minimally adequate medical care to those who they are punishing by incarceration." *Hoffer v. Sec'y*, Fla. Dep't of Corr.,

973 F. 3d 1273, 1270 (11th Cir. 2020) (quoting *Harris v. Thigpen*, 941 F. 2d 1495,

1504 (11th Cir. 1991)).  This case law makes very clear that deliberate indifference

is a "steep hill" for a plaintiff to climb. *Hoffer*, 973 F. 3d at 1272. *Johnson v. Lewis*,

83 F. 428 1319 (11th Cir. 2023).  Moye's evidence at trial did not come close to

reaching the summit of that hill.

Other courts have specifically addressed the treatment of incarcerated

inmates, like Moye, with osteomyelitis and found as a matter of law that deliberate

indifference on behalf of the medical provider did not exist. In *East v. Minnehaha

Cty,* United States District Court for the District of South Dakota, Southern

Division, 2019 WL 1434974 (2019), a complaint was made for deliberate

indifference to an inmate's serious medical needs in connection with a toe injury

leading to the removal of a toe and additional surgery and foot issues. The inmate's

physician, Dr. Heisler, treated the inmate's foot for open wounds. Despite two

courses of antibiotics that had been administered, the lesions on the inmate's foot

had grown to quarter size. The inmate's foot wounds had been draining, had a foul

smell, and appeared to change from white or pink to being more red. The

physician, Dr. Heisler, ordered weeks of treatment and daily cleaning, with plans to

trim the callous to help the healing process if there was no improvement. The

record revealed that the physician, Dr. Heisler, evidently became surprised to learn

that the inmate had osteomyelitis, as shown by x-ray, and the condition was far

more serious than what Dr. Heisler thought she was treating.

The Inmate's wounds were initially observed and treated in early April 2013.

By August 2013, the physician noted that the inmate's condition, showing possible

osteomyelitis, was far more serious than she initially thought. Similar to Plaintiff's

claims here, the inmate's claim in *East* related to the delay in ordering the x-ray or

referring the inmates to an outside physician for an evaluation of possible

osteomyelitis. In granting summary judgment in favor of the physician, the court

noted:

> Perhaps Dr. Heisler made an error in judgment or even malpractice in
> not discerning possible osteomyelitis earlier during East's care. In
> hindsight, Dr. Heisler should have ordered an x-ray earlier, referred
> East to a specialist earlier, and been suspicious of osteomyelitis
> earlier. However, the deliberate indifference standard requires more
> than a showing of negligence or even gross negligence. *Langford,* 614
> F. 3d at 460; *Alberson,* 458 F. 3d at 765. Rather, Dr. Heisler's mental
> state must be "akin to criminal recklessness." *McCaster,* 684 F. 3d at
> 764 (citation omitted). This court must consider Dr. Heisler's actions
> in light of the information that she possessed at the time, the practical
> limitations of her position, and alternative courses that would have
> been apparent to her. *Letterman,* 789 F. 3d at 862; *Gregoire*, 236 F. 3d
> at 419. Even viewing the facts in light most favorable to East (the
> inmate), Dr. Heisler's conduct was not "akin to criminal
> recklessness," but at worst was negligence or gross negligence. See
> *Langford*, 614 F. 3d at 460.

East v. Minnehaha CTY, 2019 U.S. Dist LEXIS 59455 at 63-64

Similarly, medical providers were claimed to have committed deliberate

indifference with regard to an inmate's medical needs when they did not discover

the inmate's osteomyelitis, which failure led to a below-the-knee amputation. The inmate retained the services of an infectious disease specialist with regard to the care provided by the inmate's physicians. In finding against deliberate indifference, the Court in *Green v. Burnside*, 2023 WL 5960748 (N.D. Ga 2023) stated as follows:

> Of course, even if it could somehow be said that Dr. Burnside or Dr. Fogam disregarded Green's serious medical needs, that is not enough-the defendant must have also "acted with more than gross negligence." *Wade*, 67 F. 4th at 1374. This standard requires a showing that Dr. Burnside and Dr. Fogam "recklessly disregarded a substantial risk of serious harm to" Green. *Id.* at 1375. The record does not support such a finding.
>
> Because neither defendant failed to act, any argument regarding their actions is a mere disagreement about the course of Green's treatment-"a classic example of a matter for medical judgment" that does not give rise to an actionable claim of deliberate indifference. *Estelle*, 429 U.S. at 107; *Harris v. Thigpen*, 941 F. 2d 1495, 1505 (11th Cir. 1991) ("mere incidents of negligence or malpractice do not give rise to the level of constitutional violations.").
>
> The Court recognizes that Green's expert, an infectious disease specialist, opined that Dr. Burnside, an internist, "deviate[d] from the standard of care required" and should have immediately sent Green to the hospital. And perhaps implausibly, the infectious disease specialist opined that Dr. Fogam, an internist, should have sent Green immediately to the hospital when he received Dr. Zimmerman's x-ray report. First, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [fails to] support a claim of cruel and unusual punishment." *Keohane of Fla. Dep't of Corr. Sec'y,* 952 F. 3d 1257, 1266 (11th Cir. 2020). "[I]t is axiomatic that simple medical malpractice does not rise to the level of constitutional violation." *Wade*, 67 F. 4th at 1375. "Although [Green] may have desired different modes of treatment, the care [the defendants] provided did not amount

18

to deliberate indifference." *Hamm v. DeKalb Cnty.,* 774 F. 2d 1567, 1575 (11th Cir. 1985). Consequently, an argument about what either defendant should have done or whether the standard of care was breached is misplaced in the context of an Eighth Amendment claim. Second, accusations by a specialist that Dr. Burnside or Dr. Fogam breached the standard of care, on these facts, is quibbling. Again, both responded immediately to Green's bleeding ulcer. That an infectious disease specialist might have taken a different course does not suggest that Dr. Burnside and Dr. Fogam disregarded Green's bleeding toe, much less that they acted with more than gross negligence.

Finally, Dr. Burnside and Dr. Fogam's respective responses to Green's medical condition were also not "poor enough to constitute an unnecessary and wanton infliction of pain." *Taylor v. Adams*, 221 F. 3d 1254, 1258 (11th Cir. 2000). Nor did either defendant provide "grossly inadequate care," make "a decision to take an easier but less efficacious course of treatment," or provide "medical care that [was] so cursory as amount to no treatment at all." *Melton v. Abston*, 841 F. 3d 1207, 1223 (11th Cir. 2016).

*Green v. Burnside*, 2023 U.S. Dist LEXIS 162701 at 22-23

In *Gausnell v. Fortner*, 2014 U.S. Dist. LEXIS 93248 (E.D. Tex. 2014), an inmate arrived at a correctional facility and informed the medical provider that he had osteomyelitis in the 3rd toe of his right foot. Upon his arrival at the correctional facility, he talked to a nurse about his toe. The nurse referred the inmate to the physician who ordered x-rays. The physician reviewed the x-rays and informed the inmate that he did not have osteomyelitis, instead he had merely arthritis. Some 4 months later, the inmate was transferred to another correctional facility where further x-rays were taken which subsequently confirmed the inmate had osteomyelitis. Therefore, the inmate was transferred to a local hospital where he eventually had surgery on his toe.

19

The Court found that the initial physician responded to the inmate's complaints by having the inmate's toe x-rayed. The physician, the Court held, did not ignore the inmate's complaints. Based upon the findings from the x-ray, the physician concluded that the inmate had arthritis, as opposed to osteomyelitis. The diagnosis ultimately proved to be incorrect. The Court found that the inmate did not have a basis for deliberate indifference based upon the misdiagnosis by the physician. The Court in the *Fortner* matter stated:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by a medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F. 2d 1236, 1238 (5th Circuit 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore, the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer,* 511 U.S. at 838.

*Gausnell v. Fortner*, 2014 U.S. Dist LEXIS 93248 at 4-5, citing Domino v. Texas Dept. Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).

A plaintiff's burden regarding deliberate indifference to serious medical needs was recently addressed by the Eleventh Circuit in *Keohane v. Florida Dept. of Corrections Secretary*, 952 F. 3d 1257 (11th Cir. 2020). In *Keohane*, the Court stated:

> A prisoner bringing a deliberate-indifference claim has a steep hill to climb. "We have held, for instance, that the Constitution doesn't require that the medical care provided to prisoners be "perfect, the best

obtainable, or even very good." *Harris*, 941 F.2d 1510 (quotation omitted).    Rather, "[m]edical treatment violates that [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id*. at 1505 (quotation omitted). We have also emphasized – as have our sister circuits – that "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [fails to] support a claim of cruel and unusual punishment." *Id*.; *accord, e.g.*, *McGell University v Norwood*, 899 F.3d 1159, 1162 (10th Circuit 2018) ("We have consistently held that prison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants."); *Kozelek v. Spencer*, 774 F. 3d 63, 82 (1st Circuit 2014) (*en banc*) ("[The Eighth Amendment] does not impose upon prison administrators a duty to provide care that is ideal, or of the prisoner's choosing.").

*Keohane v. Florida Dept. of Corrections Secretary*, 952 F. 3d 1257, 1266 (11th Cir. 2020)

It is undisputed with the evidence before the Court that Mr. Moye was seen and treated by Dr. Pouparinas at the Fountain Correctional Facility from October 7, 2019 through January 26, 2020. During that time, Mr. Moye received x-rays, an MRI, numerous courses of antibiotics, a debridement of the wounds on his left foot, orders for daily acidic acid wash, orders for daily wound treatment, orders for Solicite wound gel treatment, had lab work drawn on numerous occasions, had wound cultures, and was sent out and seen by an outside free world specialist, Dr. Travis Paul, who in fact had treated Mr. Moye prior to his incarceration, and even suggested prior to his incarceration that he consider an amputation.

Dr. Pouparinas' treatment of Mr. Moye between October 7, 2019 through January 26, 2020, showed no indications or signs of deliberate indifference with regard to Dr. Pouparinas' treatment of Mr. Moye.  In fact, his actions are the opposite of indifference given the volume and variety of medical treatment provided.  The fact that Plaintiff's expert would have provided different treatment is insufficient as a matter of law to demonstrate deliberate indifference.

Therefore, Dr. Pouparinas is entitled to judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure.

Respectfully submitted,

/s/ Philip G. Piggott
PHILIP G. PIGGOTT (ASB-4379-P67P)
E-mail: ppiggott@rushtonstakely.com
RUSHTON, STAKELY, JOHNSTON
  & GARRETT, P.A.
1901 6th Avenue North
Suite 1000
Birmingham, AL 35203
Telephone: 205-443-2769
Facsimile: 334-262-6277
Attorney for Defendant, Manuel Pouparinas, M.D.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 13, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF filing system, which will send notification of such filing to the following parties of record:

      Edward Rowan
      Tiffany Ray
      Taylor Martino, PC
      P. O. Box 894
      Mobile, AL 36601
      ed@taylormartino.com
      tiffany@taylormartino.com

and I hereby certify that I have mailed by U. S. Postal Service the document to the following non-CM/ECF participants:

                    /s/ *Philip G. Piggott*
                    OF COUNSEL